88 P.3d 1220

**STATE of Idaho, Plaintiff–Appellant,**

v.

**John Robert SHELDON, Defendant–Respondent.**

No. 28974.

Court of Appeals of Idaho.

Dec. 17, 2003.

Review Denied May 6, 2004.

Hon. Lawrence G. Wasden, Attorney General; Michael A. Henderson, Deputy Attorney General, Boise, for appellant.

Michael A. Henderson argued. Westberg, McCabe & Collins, Boise, for respondent. Thomas J. McCabe argued.

LANSING, Chief Judge.

In this appeal the State seeks reversal of a district court order suppressing evidence found during an automobile search and a subsequent order dismissing the case. The State contends that the district court erred in concluding that the police officers had unlawfully extended the scope of a traffic stop by questioning the driver on matters unrelated to the stop. We reverse and remand.

## I.

### BACKGROUND

The following facts are drawn from the State's evidence presented at the hearing on the motion to suppress. At approximately 3 a.m., Officers Breck Orton and Tim Kukla of the Boise Police Department observed a vehicle exit an alley running between Russett and Post streets. Because the car emerged from the alley without stopping before entering the street, the officers initiated a traffic stop. Earlier that evening, the officers had seen the same vehicle parked at a house on Russett Street. The officers were interested in that house because they had information about drug use there. Officer Orton immediately radioed Officer Jeff Stiles about this vehicle stop and its location because Stiles had information concerning the people who resided in the Russett Street house.

Officer Orton noted that the vehicle's driver, John Robert Sheldon, appeared nervous and that his eyes were glassy and bloodshot. Sheldon produced his driver's license and registration but did not have proof of insurance. Orton returned to his patrol car to run checks on Sheldon's license and registration and to write a citation charging Sheldon for having no proof of insurance. While in his patrol car, Orton received a radio call from Officer Stiles, who was patrolling nearby, warning Orton that Sheldon had been known to carry weapons and that he was associated with people who carry weapons. Stiles also said that he would be coming to assist. Stiles arrived shortly thereafter, before Orton had finished writing the citation. Orton then stopped filling out the citation, and he and Stiles talked briefly about the possibility of weapons and intoxication. Orton returned to Sheldon's vehicle and asked him to exit the vehicle so a horizontal gaze nystagmus test could be conducted to determine whether Sheldon was driving under the influence of alcohol. Before administering the test, Orton patted down Sheldon for weapons, finding only a pocket knife. The nystagmus test disclosed no signs that Sheldon was under the influence of alcohol.

After the test was completed, Officer Orton had a brief conversation with Sheldon, and then Officer Stiles engaged Sheldon in a conversation regarding Sheldon's vehicle, which Stiles recognized as one that had previously belonged to a man named Gibson, a known drug offender. After querying Sheldon about where he obtained the vehicle, Stiles asked if Sheldon had any weapons in the vehicle. Sheldon responded that he did not. Stiles then requested permission to

search the car for weapons, and Sheldon consented. During the search, Officer Stiles discovered a pair of brass knuckles, a nylon and fiberglass knife, and an expandable baton. Sheldon was thereupon arrested for possession of concealed weapons.

After the arrest, the officers conducted another search of the vehicle incident to the arrest. In this search they discovered approximately 615 grams of methamphetamine under the backseat of the vehicle. Sheldon was taken to the police station, where Officer Orton finished issuing the citation for no insurance and returned Sheldon's license and registration to him.

Sheldon was charged with trafficking in methamphetamine, Idaho Code § 37–2732B(a), and concealing a dangerous weapon, I.C. § 18–3302(9). Prior to trial, he filed a motion to suppress the evidence discovered in the search of his vehicle, arguing that the questioning by Officer Stiles regarding the vehicle's ownership and the request to search the car were beyond the scope of the traffic stop and violated Sheldon's Fourth Amendment rights. The district court initially denied the motion. Later, however, when Sheldon filed a motion to reconsider the suppression issue based upon this Court's recent decision in *State v. Gutierrez,* 137 Idaho 647, 51 P.3d 461 (Ct.App.2002), the district court reversed itself and granted the motion to suppress. Thereafter, the district court dismissed the case on Sheldon's motion. The State now appeals the suppression and dismissal orders.

## II.

## ANALYSIS

The review of an order suppressing evidence involves mixed questions of law and fact. *State v. Zubizareta,* 122 Idaho 823, 826, 839 P.2d 1237, 1240 (Ct.App.1992); *State v. McAfee,* 116 Idaho 1007, 1008, 783 P.2d 874, 875 (Ct.App.1989). On appeal, we defer to the findings of the district court unless they are clearly erroneous, *State v. DuValt,* 131 Idaho 550, 552–53, 961 P.2d 641, 643–44 (1998); *Zubizareta,* 122 Idaho at 826, 839 P.2d at 1240, but we exercise free review in deciding whether, on those facts, constitu-

tional requirements have been satisfied. *Id.* Here, the facts are undisputed and we are therefore presented solely with the question whether, on the evidence presented by the State at the suppression hearing, the extension of Sheldon's detention beyond the duration necessary to issue a traffic citation was constitutionally permissible.

A traffic stop is subject to the Fourth Amendment restraint against unreasonable seizures. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Because a routine traffic stop is normally limited in scope and of short duration, it is more analogous to an investigative detention than a custodial arrest and therefore is analyzed under the principles set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Prouse,* 440 U.S. at 653–54, 99 S.Ct. 1391. Under *Terry,* an investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Id.* at 21, 88 S.Ct. 1868. *See also United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *State v. Holcomb,* 128 Idaho 296, 302, 912 P.2d 664, 670 (Ct.App.1995). The justification for an investigative detention is evaluated upon the totality of the circumstances then known to the officer. *Cortez,* 449 U.S. at 418, 101 S.Ct. 690; *State v. Rawlings,* 121 Idaho 930, 932, 829 P.2d 520, 522 (1992). The information available to the detaining officers must show a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez,* 449 U.S. at 417–18, 101 S.Ct. 690. *See also Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *State v. Salato,* 137 Idaho 260, 264, 47 P.3d 763, 767 (Ct.App. 2001). To meet the constitutional standard of reasonableness, an investigative detention must not only be justified by reasonable suspicion at its inception, but also must be reasonably related in scope to the circumstances that justified the stop in the first place. *Royer,* 460 U.S. at 498–500, 103 S.Ct. 1319; *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry,* 392 U.S. at 19–20, 88 S.Ct.

1868; *State v. Johnson*, 137 Idaho 656, 659, 51 P.3d 1112, 1115 (Ct.App.2002).

The purpose of a stop is not permanently fixed, however, at the moment the stop is initiated, for during the course of the detention there may evolve suspicion of criminality different from that which initially prompted the stop. *State v. Parkinson*, 135 Idaho 357, 362, 17 P.3d 301, 306 (Ct.App. 2000). As we stated in *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct.App. 1990):

> [A]ny routine traffic stop might turn up suspicious circumstances which could justify an officer asking questions unrelated to the stop. The officer's observations, general inquiries, and events succeeding the stop may—and often do—give rise to legitimate reasons for particular lines of inquiry and further investigation by an officer.

Accordingly, the length and scope of the stop may be lawfully expanded if the detaining officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. 1868.

The questioning conducted by Officer Stiles clearly went beyond the scope of the stop for a traffic violation and significantly extended the duration of the stop. Therefore, we must determine if Officer Stiles had reasonable suspicion to justify the extended detention. The State contends that facts known to the officers before Stiles began questioning Sheldon, when considered with the reasonable inferences that an experienced officer would draw, gave rise to reasonable suspicion to expand the stop for investigation into drug activity. Sheldon responds that, as to most of the officers' claimed information about Sheldon's alleged drug involvement, the State presented no evidence showing that the information came from reliable sources, and therefore it should not be considered. Sheldon also argues that even when such information is taken into account, the information held by the police did not give rise to reasonable suspicion that Sheldon was involved in any illegal drug activity.

In discussing the standard for determining whether the information held by detaining officers amounts to reasonable suspicion, the United States Supreme Court has stated:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.... Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture" that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. The *Gates* [*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1982)] Court applied its totality-of-the-circumstances approach in this manner [in the probable-cause context], taking into account the facts known to the officers from personal observation, and giving the anonymous tip the weight it deserved in light of its indicia of reliability as established through independent police work. The same approach applies in the reasonable-suspicion context, the only difference being the level of suspicion that must be established.

*Alabama v. White*, 496 U.S. 325, 330–31, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (citations omitted). Accordingly, not all information received by an officer will contribute to a finding of reasonable suspicion; rather, where the information is not an officer's first-hand knowledge, consideration must be given to the source and the reliability of the information.

The State's evidence at the suppression hearing shows that when Officer Stiles began

questioning Sheldon about the vehicle, the officers possessed the following information: (1) Officer Stiles had been told by informants that one of Sheldon's acquaintances, Dan Heideman, dealt in methamphetamine and was often armed, (2) Officer Stiles had been told that Heideman got his methamphetamine from Sheldon, (3) Heideman's girlfriend and her mother lived at the house on Russett Street and both had been arrested for drug offenses, (4) Heideman was often at the house on Russett Street, (5) Officers Orton and Kukla had seen Sheldon's vehicle parked at the house earlier that night, (6) the vehicle Sheldon was driving had previously been registered to Howard Gibson, (7) there was another vehicle registered jointly to Sheldon and Gibson, (8) Officer Stiles had previously arrested Gibson for possession of methamphetamine after finding drugs in a car, (9) two informants had told Stiles that Sheldon was dealing drugs and often carried a gun, (10) Sheldon had left the Russett Street house in the early morning hours and his eyes were bloodshot and glassy, but he did not exhibit signs of being under the influence of alcohol.

In evaluating the sufficiency of this information to establish reasonable suspicion, little or no weight can be given to the information about Heideman, including the information that he obtained methamphetamine from Sheldon. The State presented no evidence showing the source, reliability, or age of this information, nor evidence that any of this information from unnamed sources had been verified in any way by independent police work. The remaining information, however, warrants consideration. Officer Stiles had personal knowledge that Gibson and a resident of the Russett Street house were drug users, for he had arrested them for such offenses. It appears that the officers also had first-hand knowledge, or had gained knowledge from reliable law enforcement sources in the ordinary course of their duties, that the second occupant of the Russett Street house had been arrested for a drug offense, that there was a car registered jointly to Sheldon and Howard Gibson, and that the car Sheldon was driving had previously been registered to Gibson. Stiles had also received information from two informants whose identity was known to him that Sheldon was dealing in drugs and carried a gun. The fact that Officer Stiles knew the informants' identity provides some modicum of reliability because of the informants' risk of accountability if their tips turned out to be fabricated. *See State v. Alexander,* 138 Idaho 18, 24, 56 P.3d 780 (Ct.App.2002); *State v. Peterson,* 133 Idaho 44, 48 n. 1, 981 P.2d 1154, 1158 n. 1 (Ct.App.1999). In addition, the tips regarding Sheldon's drug involvement were consistent with the officers' knowledge of his association with known drug offenders, Gibson and the occupants of the Russett Street residence. The foregoing information, coupled with the officers' knowledge that shortly before the traffic stop, at about 3 a.m., he had left a house that was associated with drug activities, that his eyes were bloodshot and glassy, and that this appearance of his eyes was apparently not caused by alcohol consumption, was sufficient to create reasonable suspicion of illegal drug activity and thereby justify the questioning that extended the traffic stop.

This development of reasonable suspicion to investigate Sheldon for criminal activity apart from the traffic violation distinguishes his case from *Gutierrez,* upon which the district court relied. In *Gutierrez,* where we held that a traffic stop had been impermissibly extended by unrelated questioning, we noted: "[T]he State does not contend, and the facts would not support a finding, that [the officer] possessed reasonable suspicion that would justify a detention to investigate any offense other than the speeding offense that motivated the initial stop." *Gutierrez,* 137 Idaho at 651, 51 P.3d at 465. Thus, application of *Gutierrez* does not warrant suppression in Sheldon's case.

Although Officer Stiles' questioning about Sheldon's vehicle was not directly about drug crimes, the questioning appears to have been an oblique approach to investigating Sheldon's relationship to Gibson, a known drug offender. While indirect, it was sufficiently aimed toward investigation of Sheldon's drug involvement to fall within the scope of the justified investigation of drug activity.

Stiles was also justified in requesting consent to search Sheldon's car based upon the information he had received about Sheldon carrying weapons. A "frisk" of a vehicle for weapons is permissible when officers have a reasonable suspicion that a person stopped in a vehicle is armed and dangerous. *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *State v. Muir,* 116 Idaho 565, 567, 777 P.2d 1238, 1240 (Ct.App.1989).

Accordingly, we hold that the district court erred in granting Sheldon's suppression motion. It follows that the district court's order dismissing the charge, which was predicated upon the suppression of the State's evidence, was also error.

The district court's order suppressing evidence and its order of dismissal are reversed and the case is remanded for further proceedings.

Judge PERRY and Judge GUTIERREZ CONCUR.