**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36165**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2010 Unpublished Opinion No. 733** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: December 7, 2010** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **BENJAMIN CORY SIMONS,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Order partially denying motion to suppress, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Benjamin Cory Simons appeals his judgment of conviction for possession of a controlled substance, with an intent to deliver, Idaho Code § 37-2732(a)(1)(A), rendered upon a conditional guilty plea. Simons argues the district court erred in partially denying his motion to suppress. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Idaho State Police Trooper Bingham stopped a vehicle on I-84 for speeding. Bingham approached the vehicle from the passenger side. Simons was driving and there was a passenger in the front seat as well as a passenger in the rear seat. Bingham smelled a strong odor of air fresheners and all three occupants of the vehicle were smoking freshly lit cigarettes. As Bingham asked the driver some questions, he observed the front passenger was extremely nervous. While Simons was producing his driver's license, Bingham saw that Simons had an

1

estimated $5,000 in cash in his wallet. Bingham collected driver's licenses from Simons and one passenger and wrote down the other passenger's name and social security number. Bingham then returned to his car and immediately requested a canine unit. Approximately three minutes later, Bingham was advised that a canine unit would respond in approximately twenty minutes, and Bingham began relaying the occupants' identification information to dispatch to check for any outstanding warrants. After Bingham finished processing the information and writing the speeding ticket, dispatch informed him the canine unit was still six to seven minutes away.

Trooper Bingham had Simons step out of the vehicle to give him a ticket for speeding. Bingham returned the driver's licenses he collected and told Simons he could go. Then Bingham asked Simons if he could ask him some questions, and Simons agreed. Bingham asked Simons if he had any one of a long list of drugs, which Simons denied. At the preliminary hearing, Trooper Bingham testified that during this conversation he moved downwind of Simons and was able to smell marijuana. Bingham asked Simons if he could search his car. Simons refused to give consent. Bingham then informed Simons that he was being detained until the canine unit could arrive, which was five minutes later.

The drug dog alerted on the vehicle, and inside the car the officers found an empty 7-Up can with a twist-off compartment that was empty, a small digital scale with white residue, and small black Ziploc bags with marijuana leaves printed on them. Trooper Bingham decided to release Simons and the passengers, but to impound the vehicle to allow for a more thorough search of the vehicle and to investigate a suspicious looking switch, which Simons said was used for his sound system. While the officers retained possession of the vehicle, the occupants were driven to a nearby store. After the occupants of the vehicle were dropped off at the store, a cigarette package was found where Simons had been standing during the vehicle search. It contained multiple dime-sized black baggies with a white compressed powder substance. The officers then returned to the store and arrested all the occupants.

Trooper Bingham *Mirandized*[1] Simons and then questioned him about the cigarette package. In response, Simons said that inside the cigarette package there was a white powder substance in small black baggies. When Trooper Bingham asked Simons what the white substance was, Simons stated that he wanted to talk to his attorney before telling him. Bingham

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

questioned Simons further about who owned the backpack and whether the substance was cocaine. Simons stated that he owned the backpack and that it was cocaine.

The State charged Simons with possession of a controlled substance with the intent to deliver, I.C. § 37-2732(a)(1)(A), failure to affix tax stamp, I.C. §§ 63-4202, 63-4204, 63-4205, and possession of drug paraphernalia, I.C. § 37-2734A. Simons filed a motion to suppress all evidence obtained as a result of the traffic stop. The district court granted the motion to suppress regarding statements Simons made after requesting to speak with his attorney, but the court denied the motion for all other evidence, including the physical evidence obtained from the vehicle and the evidence found in the cigarette package. Simons entered a conditional guilty plea to possession of a controlled substance with intent to deliver, and reserved his right to appeal the partial denial of his motion to suppress. Simons appeals.

## II.

## DISCUSSION

Simons contends that the district court erred in only partially granting his motion to suppress. Simons does not dispute that Trooper Bingham was justified in initially stopping him for speeding. He contends that Trooper Bingham impermissibly extended the duration of the traffic stop and the physical evidence that was seized should have also been suppressed. While the State asserts that the officer did not delay the stop, the focus of the State's argument is that Bingham learned of specific, articulable facts constituting reasonable suspicion to justify extending the detention to wait for the drug dog.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). The determinations of reasonable suspicion and probable cause are reviewed de novo on appeal, even though the findings of fact, which are based on the totality of the circumstances, are only reviewed for clear error. *State v. Munoz*, 149 Idaho 121, 127, 233 P.3d 52, 58 (2010).

3

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Simons concedes that Trooper Bingham had reasonable suspicion to stop his vehicle for speeding.

The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe,* 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon,* 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez,* 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe,* 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305.

The detention becomes unreasonable if an officer significantly extends the duration of the stop to investigate other criminal conduct. *Sheldon*, 139 Idaho at 984, 88 P.3d at 1224. The

4

United States Supreme Court has stated that a suspect "may not be detained even momentarily without reasonable, objective grounds for doing so." *Florida v. Royer*, 460 U.S. 491, 498 (1983). In *State v. Gutierrez*, 137 Idaho 647, 51 P.3d 461 (Ct. App. 2002), a vehicle was stopped for speeding. The officer gave the driver a warning for speeding and returned the license and registration. Then, without letting the driver know he could leave, the officer questioned the driver about drugs or alcohol in the car, and explained the delay (which amounted to sixty to ninety seconds) was due to the fact that one of the passengers appeared nervous. The officer obtained consent to search the vehicle from the driver and then asked the passengers if they objected to the driver's consent, which they did not. The officer found marijuana that belonged to the passengers. This Court held that because the officer had not informed the driver he was free to leave, among other factors, the stop had not evolved into a consensual encounter. *Id*. at 651, 51 P.3d at 465. This Court then held that the officer impermissibly extended the detention, beyond what was necessary to deliver the traffic warning, when he questioned the driver about drugs and alcohol and requested consent to search the car. *Id*. at 652, 51 P.3d at 466.

Similarly, in *State v. Aguirre*, 141 Idaho 560, 561-562, 112 P.3d 848, 849-850 (Ct. App. 2005), Aguirre was stopped for failing to yield as he exited a parking lot. After collecting the license, registration, and insurance, the officer asked Aguirre if there was anything illegal in his vehicle, asked for permission to search the vehicle, and finally ran a drug dog around the vehicle. There, "[t]he purpose that justified the stop--the issuance of a traffic citation--was immediately abandoned," and because the officers expanded the scope of the stop without reasonable suspicion, this Court held the use of the drug dog impermissibly extended the duration of the detention. *Id*. at 564, 112 P.3d at 852.

While a significant delay is unreasonable, officers have limited discretion to investigate other crimes during the course of a routine traffic stop. The Supreme Court has stated "a police officer's brief detention of a driver to run a status check on the driver's license, after making a valid, lawful contact with the driver, is reasonable for purposes of the fourth amendment." *State v. Godwin*, 121 Idaho 491, 495, 826 P.2d 452, 456 (1992). An officer conducting a legal traffic stop may permissibly ask for consent to search the vehicle while the driver is still detained, when that request only momentarily extends the stop. *State v. Silva*, 134 Idaho 848, 852-53, 11 P.3d 44, 48-49 (Ct. App. 2000). Brief inquiries or other investigation techniques unrelated to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights if

they do not extend the duration of the stop. *Roe,* 140 Idaho at 181-82, 90 P.3d at 931-32. In *Parkinson*, 135 Idaho at 362-63, 17 P.3d at 306-07, this Court held that it was permissible for one officer to question a vehicle's driver about drugs and weapons and to take a drug dog around the vehicle while another officer was busy checking with dispatch on the driver's status and writing out a traffic citation. It is also within an officer's discretion to instruct the driver to exit or remain in the vehicle during a lawful stop. *Id*. at 363, 17 P.3d at 307.

Even though detentions must ordinarily be temporary and last no longer than necessary to effectuate the purpose of the stop, when the investigative detention discloses evidence of other possible crimes the officer may expand the duration and focus of the detention. *State v. Brumfield*, 136 Idaho 913, 916-17, 42 P.3d 706, 709-10 (Ct. App. 2001) (holding that a stop to investigate the operation of an unregistered automobile justifiably developed into an investigation for drug activity and the sixteen-minute delay in waiting for the canine unit was reasonable). The length and scope of an investigatory detention may be expanded if objective and specific articulable facts exist to justify the suspicion that a detained person is engaged in criminal activity. *State v. Grantham*, 146 Idaho 490, 496, 198 P.3d 128, 134 (Ct. App. 2008). In *Grantham*, a deputy stopped a vehicle that had swerved on suspicion that the driver was under the influence. During the course of the stop, the deputy observed that both the driver and Grantham had characteristics of extended methamphetamine use--"appeared disheveled and unkempt, had pock-marked skin, were gaunt or underweight, and had missing or rotted-out teeth." *Id*. at 497, 198 P.3d at 135. The deputy learned that neither the driver nor Grantham owned the vehicle, the driver did not know the owner's name, and Grantham only knew the owner's first name. Consistent with methamphetamine use, the driver was unable to stand still. The driver's demeanor also changed visibly when asked if there was methamphetamine in the vehicle. This Court held that the deputy's "observations considered together, and including his training and experience, give rise to reasonable suspicion sufficient to expand the scope of the traffic stop." *Id*. Further, the deputy's request for background information on the suspects and requesting a drug dog to search the vehicle were held to be reasonable methods of investigating this suspicion.

In this case, the district court recited the facts as follows:

> The testimony of Bingham at the preliminary hearing and his observations on the ISP video indicate that Bingham observed that all three occupants were smoking freshly lit cigarettes; that there were numerous air fresheners on the

6

steering column; that Simons had an inordinate amount of cash in his wallet which Bingham estimated to be in the range of $5,000.00; that the occupants appeared to be nervous; that there was large quantity of beer in the back seat; and that he had a 99% belief that he smelled the odor of marijuana emanating from the person of Simons. The use of cigarette smoke and air fresheners under certain circumstances can be used to be a "drug-masking odor." This information was known to Bingham after his initial contact with the occupants of the vehicle, and became especially noteworthy in light of the testimony of Bingham that he detected the odor of marijuana after he had Simons exit his vehicle. *Brumfield*, 136 Idaho at 917, 42 P.3d at 710; *United States v. Wisniewski*, [358 F.Supp.2d 1074, 1090 (D. Utah 2005)].

The district court held that Trooper Bingham was lawful in removing Simons from the vehicle and when Simons was outside of the car Bingham detected the odor of marijuana. The district court also held that the odor of marijuana, together with the other observed facts, supported Bingham's reasonable objective belief that Simons was engaged in illicit drug activity. Thus, the district court held that the detention of Simons after issuing the citation was lawful and did not violate the Fourth Amendment.

Simons does not dispute that Trooper Bingham had reasonable suspicion to detain him once Bingham smelled marijuana. Rather, Simons focuses on the three-minute delay after Bingham had obtained Simons' identification information and requested a drug dog. Simons points out that Bingham waited for three minutes until he heard back from dispatch that a canine unit was en route before beginning to process Simons' information. Simons contends that this three-minute delay in waiting for a response from dispatch was beyond what was necessary and reasonable for a routine traffic stop.

The State argues that Simons assumes that Trooper Bingham was doing nothing in furtherance of the original purpose of the stop, such as writing the ticket, and that such an assumption is unsupported by the record. The record supports Simons' assertion that Trooper Bingham requested dispatch to send a canine unit and then waited for three minutes without processing the traffic ticket. The video and audio of the stop show that Bingham returned to his car and requested a canine unit at nine minutes fifteen seconds into the recording. At 13:46 dispatch indicates that the canine unit is en route and should arrive in twenty minutes. Bingham then begins to relay the identification information to dispatch. The State argues that Bingham could have been doing something in furtherance of the traffic stop, such as writing the ticket,

7

because the video from the squad car does not show Bingham inside the car. However, Bingham's testimony at the preliminary hearing states:

> Q: Okay. And upon collecting that information, [identification information of Simons and the passengers,] what did you do?
> A: I returned to my vehicle.
> Q: And then, while in your vehicle, what did you do?
> A: I contacted the Idaho State Police dispatch. I - immediately I requested a canine unit to respond to my location.
> Q: And so the first thing you did was contact Idaho State Police and request the canine unit?
> A: That's correct, yes.
> Q: And then upon requesting the canine unit, what did you do?
> A: I waited for them to tell me what - if a canine unit was coming or not. They advised me that Twin Falls County would be coming over with a canine unit. Then I did a driver's check on - on the occupants, or checked for driver status and for warrants. . . .

The record supports Simons' assertion that Trooper Bingham collected the identification information, returned to his squad car, and then was not actively investigating the traffic violation while he waited three minutes for a response from dispatch about the canine unit. This was a significant delay of the traffic stop and the detention was, at that time, no longer carefully tailored to investigate speeding. However, the State argues this was justified because at the time of the delay Trooper Bingham possessed reasonable suspicion of drug activity and requesting a canine unit was part of investigating that suspicion.

At the time Trooper Bingham returned to his patrol car after collecting Simons' identification information, he had many more facts to consider than merely that Simons had committed a traffic infraction. On the videotape of the stop, Trooper Bingham is heard describing facts to dispatch that justify requesting the canine unit. He stated there were multiple air fresheners, Simons and the passenger were extremely nervous, Simons had an excessive amount of cash in his wallet, including new $100 bills that Trooper Bingham estimated as $5,000, and the car had dark-tinted windows. At the preliminary hearing, Trooper Bingham testified that in his training and experience masking agents, such as cigarettes and air fresheners, are used to cover the odor of drugs in a car.

Trooper Bingham possessed reasonable suspicion that drug activity may have been occurring when he requested the canine unit. This Court has previously recognized the significance of suspects using masking odors, such as a cigar, in attempting to cover drug odors.

8

*Brumfield*, 136 Idaho at 916-17, 42 P.3d at 709-10.  Bingham's observation that all three occupants of the vehicle were smoking freshly lit cigarettes and multiple air fresheners were hanging in the car provided similar or greater suspicion.  In addition, while a suspect's nervousness may be of "limited significance," *State v. Gibson*, 141 Idaho 277, 285-86, 108 P.3d 424, 432-33 (Ct. App. 2005), a suspect's excessive nervousness may contribute to a finding of reasonable suspicion.  *See State v. Johnson*, 137 Idaho 656, 660, 51 P.3d 1112, 1116 (Ct. App. 2002).  "[T]he possession of unusually large amounts of cash or the making of uncommonly large cash purchases may be circumstantial evidence of drug trafficking."  *United States v. Thomas*, 913 F.2d 1111, 1115 (4th Cir. 1990) (citations omitted).  Trooper Bingham's observation that Simons possessed an estimated $5,000 in cash reasonably added to his suspicion.

Once Trooper Bingham possessed reasonable suspicion of drug activity he was allowed to expand the stop to pursue an investigation into drug activity.  In this case, it took approximately thirty-three minutes for the canine unit to arrive after Trooper Bingham made the request.  During that period of time Trooper Bingham was also continuing with an investigation normally associated with a traffic stop, including writing and citing the driver for speeding.  Additionally, prior to the arrival of the canine unit, Trooper Bingham smelled marijuana on Simons, which would have given Bingham probable cause to arrest Simons at that point.  On appeal, Simons only argues that the three-minute delay after Trooper Bingham first requested the canine unit was unreasonable.  This Court has previously upheld a delay to wait over one-half hour until the canine unit could arrive where the officer pursued the investigation into drug activity diligently and with reasonable speed.  *Brumfield*, 136 Idaho at 917, 42 P.3d at 710.  Simons has failed to demonstrate the delay was caused by a lack of diligence or unreasonable delay.  Considering Trooper Bingham's reasonable suspicion of drug activity, the three-minute delay was not an unreasonable detention.

## III.

## CONCLUSION

Simons failed to demonstrate that the district court erred in partially denying his motion to suppress.  The judgment of conviction is affirmed.

Chief Judge LANSING and Judge GUTIERREZ, **CONCUR.**

9