IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 43658

| STATE OF IDAHO, | ) | 2016 Unpublished Opinion No. 698 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: September 22, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JEREMY WAYNE SEWARD, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Christopher S. Nye, District Judge.

Order denying motion to suppress and judgment of conviction, <u>affirmed</u>.

Lovan, Roker & Rounds, PC; Matthew J. Roker, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Jeremy Wayne Seward appeals from his judgment of conviction for felony driving under the influence of alcohol. Seward asserts the district court erred in finding the officer had reasonable suspicion to effectuate a seizure when it denied his motion to suppress. Seward also contends the evidence of the officer's visual identification of Seward that occurred prior to the officer's confirmation of Seward's arrest warrant should be suppressed. We hold the officer had reasonable suspicion to effectuate a seizure and the evidence need not be suppressed.

## I.

## FACTS AND PROCEDURE

An officer observed a vehicle parked outside a bar in Parma, Idaho. The officer recalled that a few months prior, Seward's cousin was participating in a "ride-along" with the officer and told the officer the vehicle belonged to Seward and that Seward had an invalid driver's license, but frequently drove the vehicle. When the officer later observed the vehicle outside the bar in Parma, he ran the license plate number and confirmed the vehicle was registered to Seward and

1

Seward's brother. The officer also confirmed Seward had an invalid driver's license and an arrest warrant for failing to appear in an unrelated case. The officer also knew what Seward looked like.

Later that same evening, the vehicle drove past the officer but the officer could not see who the occupants were. The officer testified when he pulled out and began to follow the vehicle, Seward's vehicle immediately pulled into a driveway. The officer testified he did not perform a traffic stop because the vehicle voluntarily stopped in a driveway. The officer pulled in and parked behind the vehicle at a forty-five-degree angle and as he approached the vehicle, he was able to see the driver, who he immediately identified as Seward. The officer testified he greeted Seward by name, introduced himself, and told Seward he was there because he heard Seward had an invalid driver's license. The officer received Seward's information and went back to his patrol car to confirm the information through dispatch. The officer verified for the second time that night that Seward had an invalid driver's license and a valid arrest warrant. When the officer returned to arrest Seward on the warrant, he testified Seward's speech was slurred and his eyes were "glassy and bloodshot." Further, the officer noticed Seward "talking kind of lethargic and slow" and Seward told the officer he had consumed two beers. Suspecting Seward was driving under the influence of alcohol, the officer conducted a field sobriety test and a blood draw. The blood draw showed Seward was in excess of the legal blood alcohol level for driving.

The State charged Seward with felony driving under the influence of alcohol, Idaho Code §§ 18-8004, -8005. Seward moved to suppress the evidence of the officer's visual identification of him as the driver of the vehicle, arguing he was illegally detained by the officer. After a hearing, the district court denied Seward's motion to suppress, finding:

> I find that on December 24 (sic), 2014, around 10:00, Officer Ashcraft saw the pickup parked at a bar and determined that the defendant was one of two registered owners of the vehicle. The other registered owner being [Seward's] brother.
>
> [The officer] had learned two months earlier or a few months earlier that the defendant had an invalid driver's license and a warrant. He confirmed that that information was fresh that evening at approximately 10:00. It wasn't stale information. He confirmed it by running it through his computer system.
>
> Later, he saw the same pickup drive by his stationary position in Parma and as it drove by, it pulled into the driveway and then he pulled in behind it and the rest flow from that. So the question is whether Officer Ashcraft's pulling in behind the defendant's vehicle was a seizure and I find that it was a seizure.

2

. . . .

[T]he officer stated that the defendant was one of two registered owners of the vehicle which he checked on his computer to confirm that. He checked that the defendant had an invalid driver's license. Not that he had no license. He had an invalid license. He checked and confirmed that the defendant had a warrant. He had heard that the defendant was normally the one who drives the vehicle.

When the vehicle passed his location, this is at about 11:00 at night, the vehicle made furtive and evasive movements and turned into a driveway that the officer knew was not the defendant's driveway and was not on the route--you don't pull in a driveway to get to the defendant's home. And that was confirmed by the defendant's brother saying it was a furtive and evasive action.

Based on the totality of those circumstances, I find that the officer did have articulable suspicion to make the stop.

Seward conditionally pleaded guilty to felony driving under the influence, reserving his right to appeal the district court's denial of his motion to suppress. The district court imposed a unified seven-year sentence, with two years determinate. The court suspended the sentence and placed Seward on probation for a period of four years. Seward timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Seward argues the district court erred in finding the officer had reasonable suspicion to effectuate a seizure. Although Seward contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Seward's claims.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Generally, evidence obtained as a result of an unreasonable search or seizure must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

Seward argues the district court erred in denying his motion to suppress the evidence of the officer's identification of Seward as the driver of the vehicle because the officer did not have reasonable suspicion to detain him. Seward contends under *State v. Cerino*, 141 Idaho 736, 117 P.3d 876 (Ct. App. 2005), the officer did not see who was driving the vehicle before detaining him and so the officer did not have reasonable suspicion to believe Seward was engaged in criminal behavior that would justify a seizure. Seward claims none of the other information the officer possessed provided reasonable suspicion that Seward was the driver of the vehicle. The State contends *Cerino* is distinguishable from the present case because, unlike *Cerino* where the officer only knew the registered owner did not have an Idaho driver's license, in this case the officer knew: (1) what Seward looked like and could identify him by sight; (2) Seward's driver's

4

license was invalid; (3) Seward was a registered owner of the vehicle; (4) Seward was the usual driver of the vehicle; and (5) Seward had an outstanding arrest warrant. We agree with the State.

In *Cerino*, this Court recognized the Fourth Amendment is not violated when a police officer stops a vehicle for investigative purposes if the officer has a reasonable and objective basis for suspecting that the vehicle or an occupant is involved in criminal activity. *Cerino*, 141 Idaho at 738, 117 P.3d at 878 (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). In *Cerino* we held the officer did not have a reasonable suspicion of criminal activity when he stopped Cerino's vehicle. *Cerino* at 738, 117 P.3d at 878. That was so because at the time of the stop, the detective knew only that: (1) an anonymous tip indicated a similar vehicle was being used to transport illegal drugs; (2) the vehicle was registered to a female and a male who did not possess an Idaho driver's license; and (3) the vehicle was being driven by a male. *Id.* at 737, 117 P.3d at 877. The Court concluded, "In these circumstances there was little basis to infer that the male registrant was driving; it was as plausible and perhaps more likely, that the driver was someone else." *Id.* at 738, 117 P.3d at 878. Acknowledging that people frequently drive vehicles registered in the names of others, the Court held, "the mere observation of a vehicle being driven by someone of the same gender as the unlicensed owner is insufficient to give rise to a reasonable suspicion of unlawful activity." *Id.* Any other result "would endorse the sort of arbitrary invasions of personal liberty and privacy that the Fourth Amendment [was] designed to hold in check." *Id.* What is more, it would allow officers to randomly stop vehicles driven by anyone matching the gender of an unlicensed, registered owner. *Id.* Additionally, this Court reasoned, although the detective had an anonymous tip indicating a similar vehicle was being used to transport illegal drugs, the anonymous tip "did not bolster the likelihood that Cerino was the vehicle's driver at the time of the stop, nor did the information that Cerino was unlicensed tend to corroborate the anonymous tip." *Id*.

The present case is distinguishable from *Cerino* and supported by the reasoning in *Prouse* because the officer had reasonable, articulable suspicion that Seward was driving the vehicle with an invalid license. Both *Prouse* and *Cerino* concerned a random, suspicionless stop because neither officer had reasonable, articulable suspicion that the driver was driving without a valid license. Here, however, there was reasonable suspicion that Seward was driving with an invalid license. When the officer observed the vehicle being driven, it was rational for him to infer that one of the registered owners was the current driver. *See State v. Pike*, 551 N.W.2d 919,

5

922 (Minn. 1996) (concluding that "[w]hen an officer observes a vehicle being driven, it is rational for him or her to infer that the owner of the vehicle is the current operator"). Additionally, the officer's inference was supported by the previous information from Seward's cousin that Seward frequently drove the vehicle. The officer also knew from Seward's cousin and through his own confirmation from dispatch that Seward had an invalid driver's license. Because the officer knew Seward was a registered owner of the vehicle with an invalid license, the officer had reasonable, articulable suspicion to detain Seward to confirm or dispel his belief that Seward was driving the vehicle. *See. e.g.*, *Vill. of Lake in the Hills v. Lloyd*, 591 N.E.2d 524, 526 (Ill. App. Ct. 1992) (holding the knowledge that the owner's license was revoked constituted reasonable suspicion for the stop); *State v. Tozier*, 905 A.2d 836, 839 (Me. 2006) (finding the registered owner's revoked license supported reasonable suspicion); *Commonwealth v. Muckle*, 814 N.E.2d 7, 11 (Mass. App. Ct. 2004) (holding that suspension of a registered owner's driving privileges provides an objective basis for a stop); *State v. Halvorson*, 997 P.2d 751, 753 (Mont. 2000) (stating the knowledge that the vehicle's owner had a revoked license satisfied reasonable suspicion).

In this case, the investigative detention began when the officer pulled in and parked behind Seward's vehicle. The purpose of the detention was to confirm or dispel the officer's suspicion that Seward was the driver of the vehicle. In order to confirm or dispel his suspicion, because the officer knew Seward, the officer needed only to visually identify the driver of the vehicle. Once the officer visually identified Seward, the officer then had probable cause to continue the detention because he knew Seward had an outstanding arrest warrant. *See United States v. Leon*, 468 U.S. 897, 920 n.21 (1984) (a warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions). Thus, the initial visual identification of Seward was admissible, as was any subsequent evidence obtained from the seizure.

Because the officer had reasonable suspicion to detain Seward, the officer's identification of Seward as the driver of the vehicle was admissible evidence. Therefore, the district court did not err in denying Seward's motion to suppress. Given that holding, we need not address Seward's argument that evidence obtained by an officer following an unlawful detention shall be excluded if the evidence was obtained prior to the discovery of an arrest warrant.

## IV.

## CONCLUSION

For the reasons set forth above, we affirm the district court's denial of Seward's motion to suppress and judgment of conviction.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.