**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48575**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: February 23, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JARED CAMERON LORTON, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

Judgment of conviction for felony driving under the influence, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Chief Judge

Jared Cameron Lorton appeals from his judgment of conviction for felony driving under the influence (DUI). We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Lorton rear-ended a vehicle waiting at a traffic light after sundown. Following the collision, Lorton drove away from the scene of the accident without stopping. The driver of the vehicle Lorton hit reported the accident to law enforcement and followed him until he parked in a residential neighborhood, exited his vehicle, and walked into an unlit "neighborhood common area." While waiting for officers to arrive, the accident victim relayed a description of Lorton and his vehicle to law enforcement.

1

Officers who responded to the neighborhood found Lorton's vehicle, but initially could not locate Lorton. While arranging to tow Lorton's vehicle, officers observed someone matching Lorton's description in the common area. Officers entered the common area, found Lorton hiding behind a tree, handcuffed him, and led him to a nearby patrol vehicle. In response to officer inquiries, Lorton indicated that he might have a "razor knife" and was unsure if he had any other sharp objects on his person. An officer then frisked Lorton, placed him in the back of a patrol vehicle, and gave him *Miranda*[1] warnings. Subsequent field sobriety testing indicated Lorton was intoxicated. After the accident victim indicated he wanted to make a citizen's arrest and signed a blank citation form, Lorton submitted to breath tests that returned results of .183 and .190 blood-alcohol concentration. Officers then informed Lorton he was under arrest.

The State charged Lorton with felony DUI (two or more convictions within ten years) and misdemeanor leaving the scene of an accident. Lorton filed a motion to suppress evidence, contending he was unlawfully arrested when officers initially handcuffed him. The district court denied the motion, concluding that Lorton was not arrested until after he submitted to breath testing and that no evidence was obtained after that point. Lorton then entered a conditional guilty plea to felony DUI (I.C. §§ 18-8004, 18-8005(6)), reserving the right to appeal the denial of his motion to suppress. In exchange for his guilty plea, the State dismissed the misdemeanor leaving the scene of an accident charge. Lorton appeals.

## II.

### STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

### III.

### ANALYSIS

Lorton argues that the district court erred by denying his motion to suppress because the evidence he sought to suppress was fruit of an unlawful de facto arrest rather than an investigatory detention and that the arrest was unlawful under *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019), because it was for a completed misdemeanor.[2] The State responds that the district court correctly concluded that the investigative detention of Lorton did not evolve into a de facto arrest because he was a flight risk. We hold that Lorton has failed to show the district court erred in concluding he was subject to a reasonable investigative detention.

The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances, which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific, articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of the detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Id.*; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

---

[2] Because we conclude that there was no de facto arrest, we need not address Lorton's claim that his arrest was unlawful under *Clarke* even though it was amended to a felony based on his prior DUI convictions.

Whether the Fourth Amendment is violated during the course of an investigatory detention is not automatically answered by the assessment of whether police tactics did or did not amount to a "de facto" arrest. *State v. Stewart*, 145 Idaho 641, 645, 181 P.3d 1249, 1253 (Ct. App. 2008). Rather, the relevant question is whether, under the totality of the circumstances, the detention was reasonable. *See id.* Factors to be considered when evaluating the totality of the circumstances include the seriousness of the crime or crimes under investigation, the location and length of the detention, the reasonableness of the display of force by officers, and the conduct of the suspect while the encounter unfolds. *See State v. Martinez*, 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct. App. 1996).

The district court concluded that officers detained Lorton after they found him hiding behind a tree in the neighborhood common area after he fled from the scene of an accident. The district court further concluded that, despite subsequently handcuffing Lorton and placing him in the back of a patrol vehicle, the investigative detention remained reasonable because Lorton's conduct established he was a flight risk. The district court observed that no bright-line rule dictates when an investigatory detention becomes unreasonable and that, although handcuffs are not typically used during an investigatory detention, officers may handcuff individuals posing a flight or safety risk. In evaluating the decision to handcuff Lorton, the district court found that the use of handcuffs did not "result in a meaningful increase in the duration of the detention" and that officers had "good reason to consider Lorton a flight risk." In support of the latter determination, the district court noted that Lorton had left the scene of a motor vehicle accident (despite having a legal duty to remain there under I.C. § 49-1301), parked his vehicle in a residential neighborhood, and then walked into an unlit common area. Lorton continued to hide in that common area until officers spotted him sometime after an initial unsuccessful search. Turning to the decision to place Lorton into the back of a patrol vehicle, the district court reasoned that such action "is a less intrusive measure that serves the same purpose--reducing flight risk--as handcuffing." Furthermore, the district court noted that officers never told Lorton he was under arrest until breath testing indicated his blood-alcohol concentration was above the legal limit to drive. To the contrary, an officer told Lorton he was not under arrest and repeatedly "expressed the need to complete the investigation to determine whether [he] would be taken to jail" prior to the breath

4

tests.  Accordingly, in light of the totality of the circumstances, the district court concluded, "no arrest, de facto or otherwise, preceded" the breath testing.

Lorton argues that the district court erred in its analysis of the totality of the circumstances, citing multiple factors he did not assert below but now claims establish his de facto arrest.  Before the district court, Lorton argued only that a de facto arrest occurred when officers initially handcuffed him or, alternatively, when they placed him into a patrol vehicle.  We find no error in the district court's assessment of these factors.  Officers apprehended Lorton in an open, unlit neighborhood common area in which he evaded officers' initial attempts to locate him.  It was not unreasonable for officers to place Lorton into a patrol vehicle after handcuffing him as a precaution against his flight back to an unlit area where he had just evaded officers after he fled the scene of the accident, abandoned his vehicle on the roadside, and failed to turn himself in despite knowing officers were actively searching for him.

As to the other factors generally considered in determining whether there was a de facto arrest, for the first time on appeal, Lorton cites the seriousness of the crime, the location of his encounter with officers, the length of his detention and his conduct while detained.  Lorton argues that these factors, in addition to the display of force addressed by the district court, all "weigh in favor of a de facto arrest."  Generally, parties may not raise new substantive issues on appeal or adopt new positions upon which trial courts have not had an opportunity to rule.  *See State v. Gonzalez*, 165 Idaho 95, 99, 439P.3d 1267, 1271 (2018) (making clear that, to be properly preserved for appeal, both the issue and the party's position on the issue must be raised to the trial court).  Even considering the factors Lorton raises for the first time on appeal, his argument fails.

Idaho appellate courts have held that DUI is a serious crime.  *See, e.g.*, *State v. Henderson*, 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988) (noting the interest in stopping drunk driving is "compelling," because "[p]rotecting citizens from life-threatening danger is a paramount concern"); *State v. Ferreira*, 133 Idaho 474, 480, 988 P.2d 700, 706 (Ct. App. 1999) (defining drunk driving as a serious crime when considering whether a de facto arrest occurred).  Lorton cites no authority for his contention that his DUI was less serious because it was completed upon his initial encounter with officers.  To the contrary, when considering the seriousness of DUI offenses, Idaho appellate courts have focused on the potential harm a drunk driver poses by *committing* the offense, not the immediate threat of harm the driver poses upon encountering

police. *See Henderson*, 114 Idaho at 295-96, 756 P.2d at 1059-60; *Ferreira*, 133 Idaho at 480, 988 P.2d at 706. Additionally, Idaho's appellate courts have cited the increase in penalties for DUI (*i.e.*, from an infraction to misdemeanor) as evidence of the seriousness of the offense. *Henderson*, 114 Idaho at 296, 756 P.2d at 1060. That officers did not apprehend Lorton behind the wheel of an operating motor vehicle does not lessen the seriousness of his DUI.

As to the location of the encounter and his own conduct during the encounter, Lorton advances several arguments. First, Lorton contends the location "was not isolated, dangerous, or unusual"; it was "in a residential area on Christmas Eve a little after 7 p.m. with three other officers present"; there was no evidence that he "was violent or had weapons"; and he was "fully compliant" throughout the encounter. Although not expressly stated, it appears Lorton's argument is that because of the location, the number of officers and Lorton's own conduct, there was no need to handcuff him or place him in a patrol car. For the reasons already stated, the district court did not err in its conclusion that these measures were reasonable in light of Lorton's conduct prior to his contact with law enforcement, which demonstrated he was a flight risk. Lorton's post-apprehension compliance does not show that the district court erred by determining he was a flight risk. *See United States v. Purry*, 545 F.2d 217, 220 (D.C. Cir 1976) (holding that handcuffing a suspect in a completed robbery was "an appropriate method of maintaining the status quo" during an investigatory detention).

Finally, regarding the length of his detention, Lorton estimates that, with the exception of the period officers released him to conduct field sobriety testing, he remained handcuffed in the back of a patrol vehicle for approximately an hour before his formal arrest. However, during this time, officers were not only questioning Lorton, they were also waiting for the accident victim to return to the scene for an in-field identification and conducting breath testing. Consequently, Lorton has failed to show that the length of his detention was unreasonable. *See State v. Buti*, 131 Idaho 793, 796-98, 964 P.2d 660, 663-65 (1998) (holding that an investigative detention of forty-five to sixty minutes to facilitate an in-the-field identification of a burglary was reasonable).

In sum, Lorton has failed to show that he was subjected to an unreasonable investigative detention. Considered in light of the totality of the circumstances, the manner of Lorton's investigative detention was reasonable based upon the nature of the offense under investigation, the location of his seizure, the flight risk he posed, and officers' statements that Lorton was not

under arrest. Lorton has failed to show that the district court erred by denying his motion to suppress.

## IV.
## CONCLUSION

The district court properly concluded that the evidence Lorton sought to suppress did not result from an unreasonable investigative detention. Lorton has failed to show that the district court erred by denying his motion to suppress. Lorton's judgment of conviction for felony DUI is affirmed.

Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.