112 P.3d 848

STATE of Idaho, Plaintiff–Appellant,

v.

Cayetano AGUIRRE, Defendant–Respondent.

No. 29932.

Court of Appeals of Idaho.

May 17, 2005.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant.

GUTIERREZ, Judge.

The state appeals from the district court's order of suppression. The issue raised on appeal is whether the district court erred in determining that the use of a drug dog in this case unlawfully extended the traffic stop. We affirm.

## I.

### FACTUAL AND PROCEDURAL SUMMARY

A Canyon County Sheriff's deputy was assisting other officers in a traffic stop when he noticed a vehicle "circling" the scene. The deputy recognized the vehicle, a pickup truck, from prior contacts and knew that its driver, Cayetano Aguirre, was a convicted felon with a history of firearm use. When Aguirre pulled into a nearby parking lot where he could view the traffic stop, the deputy informed his supervisor that he was going to focus on the truck. The truck eventually left the parking lot but did not come to a complete stop prior to entering the roadway. The deputy decided to issue a citation to Aguirre for this traffic infraction. Not wanting to pull Aguirre over in such close proximity to the other police action and without backup, the deputy followed Aguirre for four to five miles, until two more officers had arrived. One of these other officers stopped Aguirre's truck. The deputy who had first

noticed Aguirre made contact with him and asked why Aguirre had been circling the area of the other stop. After this inquiry— to which no response can be found in the record—the deputy requested Aguirre's driver's· license, registration and insurance. After receiving these documents, the deputy asked whether Aguirre had anything illegal in his vehicle. Aguirre indicated that he did not. The deputy then requested permission to search Aguirre's truck. Aguirre refused to grant such permission, and the deputy then advised Aguirre that he would run a drug dog around the pickup. At that point, Aguirre exited his vehicle, shut the door and walked to the sidewalk.

The deputy ran his drug detection dog around the exterior of Aguirre's pickup truck. The dog alerted on a rear wheel well. As a result, the deputy let the drug detection dog enter the cab of the truck to sniff. The dog did not alert again. The deputy nevertheless searched the cab of Aguirre's vehicle and found a semi-automatic handgun. Aguirre was thereafter arrested for illegal possession of a firearm. The stop lasted between five and seven minutes.

Aguirre, who had previously been convicted of a felony, was charged by information with one count of being a felon in possession of a firearm, I.C. § 18–3316. Aguirre moved to suppress the evidence found in his vehicle, asserting that the search of his truck was illegal. After a hearing, the district court granted Aguirre's motion to suppress. The state appeals.

## II.

### STANDARD OF REVIEW

 The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences

is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## III.

### ANALYSIS

 The Fourth Amendment safeguard against unreasonable searches and seizures applies to the seizures of persons through arrests or detentions falling short of arrest. *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578–79, 45 L.Ed.2d 607, 614–14 (1975); *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 902–03 (1968). The stop of a vehicle is a seizure of its occupants and is therefore subject to Fourth Amendment standards. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621, 628–29 (1981); *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1395–97, 59 L.Ed.2d 660, 667–68 (1979);· *State v. Haworth,* 106 Idaho 405, 406, 679 P.2d 1123, 1124 (1984). The reasonableness of a given search or seizure is a question of law requiring our independent review. *State v. Parkinson,* 135 Idaho 357, 360, 17 P.3d 301, 304 (Ct.App. 2000). The question whether an investigative detention is reasonable requires a dual inquiry into (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry,* 392 U.S. at 20–21, 88 S.Ct. at 1879–80, 20 L.Ed.2d at 905–06; *Parkinson,* 135 Idaho at 361, 17 P.3d at 305. That is not to say that the purpose of a stop is fixed at the time the stop is initiated. As this Court has noted, a routine traffic stop might turn up suspicious circumstances that justify an officer asking questions unrelated to the stop. *Parkinson,* 135 Idaho at 362, 17 P.3d at 306. Nothing in the record in the instant matter suggests such circumstances arose after this stop was initiated. Furthermore, because Aguirre's failure to come to a complete stop before entering a roadway is not at issue, our analysis involves only whether the use of the drug

dog was reasonably related in scope to the circumstances which justified the traffic stop.

■■■■ The state argues that the district court erred in granting Aguirre's motion to suppress because the search of the cab of Aguirre's truck was a permissible "frisk" for weapons conducted for officer safety concerns. The rationale that allows a limited weapons frisk, under certain circumstances, of a person also allows for a limited weapons search of the passenger compartment of an automobile. *See Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201, 1219–20 (1983); *State v. Gascon,* 119 Idaho 932, 934–35, 812 P.2d 239, 241–42 (1991); *State v. Muir,* 116 Idaho 565, 567, 777 P.2d 1238, 1240 (Ct.App.1989). However, at the preliminary hearing, the deputy involved did not indicate that the purpose of the search was the equivalent of a weapons frisk. Rather, the deputy explicitly and candidly testified that the reason for the search was to look for drugs:

> Q: And what reason would you have to— why would you want to search a car that failed to come to a stop after coming out of a parking lot?
>
> A: It's part of what I do on my traffic stops. I search cars looking for illegal substances. I work narcotics. That's what I do.

The use of a drug dog to sniff a vehicle is clearly not a search for weapons.

■■■■ Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229, 238 (1983); *Parkinson,* 135 Idaho at 361, 17 P.3d at 305. The United States Supreme Court has stated that an investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer,* 460 U.S. at 500, 103 S.Ct. at 1325–26, 75 L.Ed.2d at 238. *See also State v. Godwin,* 121 Idaho 491, 501, 826 P.2d 452, 462 (1992); *State v. Martinez,* 136 Idaho 436, 440–41, 34 P.3d 1119, 1123–24 (Ct.App.2001). The U.S. Supreme Court has also recently held that a

drug dog sniff is not a search and therefore may be done during a traffic stop without reasonable suspicion of drug activity. *Illinois v. Caballes,* 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). It is therefore not necessarily a Fourth Amendment violation for an officer who has stopped someone for a traffic violation to ask unrelated questions about drugs and weapons, or to run a drug dog around the perimeter of the vehicle. *See, e.g., Parkinson,* 135 Idaho at 362–63, 17 P.3d at 306–07. However, the *Caballes* court was careful to note that the duration of the stop there at issue was not lengthened by the use of the drug dog. *Caballes,* 543 U.S. at ——, 125 S.Ct. at 837, 160 L.Ed.2d at 846.

Consistent with *Caballes,* in *State v. Silva,* 134 Idaho 848, 852–853, 11 P.3d 44, 48–49 (Ct.App.2000), this Court held that an officer's request to search a car was lawful where the request was made before the issuance of the traffic citation had been completed and such request lengthened the process only by a second or two. Furthermore, in *Parkinson,* 135 Idaho at 362–63, 17 P.3d at 306–07, this Court held that it was permissible for one officer to question a vehicle's driver about drugs and weapons and to take a drug dog around the car while another officer was busy checking with dispatch on the driver's status and writing out a traffic citation.[1] In each of these cases, the questioning and use of a drug dog did not extend the duration of the stop beyond that which was necessary to address the traffic violation.

By contrast, in *State v. Gutierrez,* 137 Idaho 647, 651–53, 51 P.3d 461, 465–67 (Ct.App. 2002), this Court concluded that it was impermissible for an officer to question a driver about matters unrelated to the traffic stop after the officer had fulfilled the purpose of the stop by issuing a written warning to the driver. Even though this questioning extended the duration of the *Gutierrez* stop by only sixty to ninety seconds, we held it was nonetheless an unwarranted intrusion upon the vehicle occupants' privacy and liberty. *Gutierrez,* 137 Idaho at 652, 51 P.3d at 466. Similarly, in *State v. Zavala,* 134 Idaho 532, 5 P.3d 993 (Ct.App.2000), this Court concluded

---

1. *Caballes,* 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 involved similar circumstances, with one officer working a drug dog while another officer prepared a warning ticket.

that a motorist had been unlawfully detained where all normal procedures for a routine traffic stop had been completed when other officers arrived and subsequently sought consent to search the vehicle.

In the instant matter, after Aguirre had been stopped, there was no effort made to further pursue the initial purpose of that stop or to dispel any concern as to why Aguirre had been "circling" the area of the unrelated traffic stop. Although the state frames the issue as one of officer safety, the only step taken towards satisfying that purpose was the deputy's first, and apparently unanswered, question of Aguirre. The deputy then requested and received Aguirre's license, registration and proof of insurance. Because the deputy had contacted dispatch while trailing Aguirre and waiting for backup, he had accordingly already checked for outstanding warrants and other pertinent information. The deputy then asked if Aguirre had anything illegal in his truck, and Aguirre replied that he did not. The deputy then requested permission to search Aguirre's vehicle. Aguirre refused, as was his right, to grant consent to such a search. The deputy then told Aguirre that he was going to run his drug dog around the truck. At that point, Aguirre exited his vehicle and walked to the sidewalk. The record does not reveal if the other officers exercised control over Aguirre's movement or location during the subsequent dog sniff, or if, as Aguirre currently suggests, he was left unattended. At any rate it is clear that the officers did not delegate among themselves responsibility for concurrent investigations—one aimed at resolution of the traffic offense, one aimed at officer safety concerns, and another aimed at drug interdiction. Rather, although Aguirre's driving information was available to the officers even before he was stopped and he had pulled over at their signal, the collective effort of the police was uniformly directed at a drug investigation completely unrelated to the traffic stop. The purpose that justified the stop—the issuance of a traffic citation—was immediately abandoned. Aguirre did eventually receive a traffic citation, but not until after he had been arrested

and transported to jail on the weapons offense. When the officers requested permission to search the truck and then employed a drug dog, they did so without reasonable suspicion of a drug-related offense. In light of all these facts, we conclude that the use of the drug dog impermissibly extended the duration of the detention authorized by *Terry*.

We conclude that the probable cause to search the interior of Aguirre's pickup truck, which was secured by the drug detection dog's alert on the exterior of the vehicle, was itself acquired through an unconstitutional expansion of the traffic stop. Accordingly, we affirm the decision of the district court granting Aguirre's motion to suppress.

Judge LANSING concurs.

Judge Pro Tem STICKLEN concurring in the result.

I concur in the result, but write separately because I do not agree with the analysis adopted by the majority. The state's argument is that the search in question was done for officer safety reasons. I agree that this argument is unsupported by the record, and that the decision of the district judge granting the motion to suppress should be affirmed on that basis. The analysis adopted by the Court is an alternative basis for affirming suggested by the defendant. I believe that adoption of this position is unnecessary; and that, even if it were necessary, it is overly restrictive. On the facts presented, I would hold that the majority approach to the case is governed by *State v. Parkinson*, 135 Idaho 357, 17 P.3d 301 (Ct.App.2000) and *State v. Silva*, 134 Idaho 848, 11 P.3d 44 (Ct.App.2000), because the traffic stop was not unreasonably prolonged by the use of a drug dog that was with the officer at the time of the stop. The result reached by the majority places a law enforcement officer in the position of trying to predict how long is too long for a traffic stop down to the second, and/or of foregoing what would otherwise be a lawful use of a drug dog if only a single officer is present. In my opinion, so long as

the traffic stop is justified and is not unreasonably prolonged, it does not matter that there is no reasonable suspicion of drug activity or that the focus of the officers includes drugs. That is exactly what happened in *Parkinson*. For these reasons, I concur in the result only.