**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41870**

| STATE OF IDAHO, | ) | 2015 Unpublished Opinion No. 323 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 27, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JARYN MYKAL WATT, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge. Hon. Theresa Gardunia, Magistrate.

Order of the district court, acting in its intermediary capacity, affirming the magistrate court's order denying motion to suppress, affirmed.

Alan Trimming, Ada County Public Defender; Heidi M. Johnson, Deputy Ada County Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Jaryn Mykal Watt appeals from the district court's intermediate appellate decision affirming the magistrate's order denying his motion to suppress evidence. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The magistrate made the following findings of fact: In February 2013, at approximately 10:15 p.m., an Ada County Sheriff's Deputy, on routine patrol near the intersection of Eagle Road and Easy Jet, pulled into a parking lot located behind a closed business in order to complete some paperwork. The deputy observed a car parked next to the business's dumpster. There were no other cars in the parking lot. The deputy observed a male, later identified as Watt, standing outside of the dumpster's surrounding fence. Watt walked into the dumpster's enclosure and then exited walking towards the parked car.

1

The deputy parked his vehicle and approached Watt. The patrol vehicle's overhead lights were not engaged. The deputy asked Watt what he was doing there. Watt responded that he was going to a friend's house and had stopped to throw away some trash. Immediately upon contact, the deputy noted that Watt's eyes were dilated, did not react to the light of his flashlight, and that his eyes appeared bloodshot and watery. When asked, Watt indicated he was not taking prescription medications. The deputy did not detect any odor of an alcoholic beverage.

The deputy obtained Watt's driver's license and returned to his patrol car to check for wants and warrants. The deputy also requested the assistance of a nearby deputy and drug dog. Thereafter, the deputy proceeded to conduct field sobriety tests which revealed Watt's inability to correctly estimate passage of time, eyelid tremors, and an elevated pulse; all indicative of intoxicant use. The other deputy and his drug dog arrived just prior to the completion of the field sobriety tests. Watt then admitted to possession of a small amount of marijuana and a pipe that were located in his car. It took approximately seven minutes from first contact with Watt for the drug dog to arrive.

Watt was cited for possession of marijuana and paraphernalia. Watt filed a motion to suppress evidence, arguing the deputy lacked reasonable suspicion to justify a detention to continue a drug investigation. The magistrate denied the motion. Watt entered a conditional guilty plea to both charges, reserving the right to appeal. The district court, sitting in its intermediate appellate capacity, affirmed the magistrate's denial of Watt's motion to suppress. Watt timely appeals.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the

2

decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).[1]

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## A.     Reasonable Suspicion

Watt argues the deputy lacked reasonable suspicion to detain him beyond the initial encounter. The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. Under the Fourth Amendment, an investigative detention is a permissible seizure if it is based on specific articulable facts which justify suspicion that the detained person is, has been, or is about to be, engaged in criminal activity.[2] *Terry v. Ohio*, 392 U.S. 1, 26 (1968); *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). The quantity and quality of information necessary to create reasonable suspicion for such a "*Terry* stop" is less than that necessary to establish probable cause, *Alabama*

---

[1]     Watt claims the State "asks this Court to apply an incorrect standard of review and to improperly rubber stamp the district court's decision as a matter of procedure." (Emphasis removed.) Watt also claims that the State attempts to "cloud" the issue by arguing the incorrect standard. However, the State properly identified the standard of review, as articulated in *Pelayo v. Pelayo*, 154 Idaho 855, 303 P.3d 214 (2013), for when an appellate court reviews a decision of a district court sitting in its appellate capacity. Watt's claims are meritless.

[2]     Although Watt contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. While Watt correctly asserts that, under certain circumstances, the Idaho Constitution may provide more protection than the United States Constitution, he presents no basis for doing so in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Watt's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

*v. White*, 496 U.S. 325, 330 (1990) and *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009), but must be more than a mere hunch or unparticularized suspicion. *Terry*, 392 U.S. at 27. The justification for an investigative detention is evaluated upon the totality of the circumstances then known to the officer. *Sheldon*, 139 Idaho at 983, 88 P.3d at 1223. Further, to meet the constitutional standard of reasonableness, an investigative detention must not only be justified by reasonable suspicion, but must also be reasonably related in scope to the circumstances that justified the stop in the first place. *Id.*

However, not all encounters between the police and citizens involve the seizure of a person. *Terry*, 392 U.S. at 19 n.16; *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, asks if the individual is willing to answer some questions, or puts forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983).

Watt does not dispute that the initial encounter was consensual in nature when the deputy approached him and began asking him questions. Instead, Watt argues that the deputy lacked reasonable suspicion to detain him at the point when the deputy took his driver's license. The State does not contend that Watt was not seized, but that the seizure was justified by reasonable suspicion. The district court agreed with the magistrate's conclusion that reasonable suspicion existed based on the evidence showing Watt may have been under the influence of intoxicants. This Court has previously indicated that an individual's bloodshot and glassy eyes would not, standing alone, provide reasonable suspicion of intoxication. *See State v. Perez-Jungo*, 156 Idaho 609, 616, 329 P.3d 391, 398 (Ct. App. 2014) ("Indeed, few additional facts are needed beyond bloodshot and glassy eyes to provide reasonable suspicion of impaired driving or illegal drug activity."); *see also State v. Grigg*, 149 Idaho 361, 364, 233 P.3d 1283, 1286 (Ct. App. 2010). However, here, the deputy possessed sufficient other information to allow the deputy to make a determination of whether Watt was under the influence. *See Grigg*, 149 Idaho at 363, 233 P.3d at 1285 (holding reasonable suspicion existed where the "officer testified that, based on his training and experience, glassy bloodshot eyes, eye twitching, and reddening of the conjunctiva are indicators of alcohol or drug use").

4

The deputy testified that he had received training in drug recognition and DUI, and had field experience in making these observations through his thirteen years of experience. The deputy observed that Watt's eyes were dilated, bloodshot, and watery. Additionally, Watt's eyes did not respond to the light coming from the deputy's flashlight. The deputy confirmed that Watt was not taking prescription medications and he did not smell of alcohol. Based on the totality of circumstances, the deputy possessed reasonable suspicion to detain Watt to determine if he was under the influence of a controlled substance.[3] Considering that Watt informed the deputy he planned to continue to drive to a friend's house, the deputy could lawfully pursue a limited investigation into whether Watt had been or would be driving under the influence.

**B.      Scope of the Investigation**

Watt also argues the stop was unlawfully extended. An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). There is no rigid time limit for determining when a detention has lasted longer than necessary; rather, a court must consider the scope of the detention and the law enforcement purposes to be served, as well as the duration of the stop. *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *State v. Ramirez*, 145 Idaho 886, 889, 187 P.3d 1261, 1264 (Ct. App. 2008). However, brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

Watt argues that after the officer returned with his license, the officer conducted three tests that are not part of the standard DUI field sobriety tests as a stall tactic in order to allow the drug dog to arrive. First, the deputy testified he measured the pupil change when exposed to light. Second, the deputy had Watt perform a "Romberg stand test," which is designed to

---

[3]      Watt offered various innocent explanations explaining why the evidence could show things other than intoxication. However, when taken together, facts susceptible to innocent explanations separately may still warrant further investigation. *See State v. Brumfield*, 136 Idaho 913, 917, 42 P.3d 706, 710 (Ct. App. 2001).

measure an individual's perception of time. The officer testified that individuals under the influence of a controlled substance will not be able to accurately estimate the passage of time. Watt estimated thirty seconds elapsed, when only twenty seconds had elapsed. The deputy also observed distinct eye tremors in Watt's eyes. Finally, the deputy checked Watt's pulse. Watt does not explain why these tests were inappropriate for determining whether he was under the influence, other than to explain that the tests are not part of the standard field sobriety tests (horizontal gaze nystagmus, walk and turn, and one-leg stand), and "two of the offered 'tests' were not tests and were the subjective measuring of a pupil and a pulse." The magistrate implicitly accepted the deputy's explanation of the tests when finding that the results of these tests supported continued detention. Given the deputy's thirteen years of experience in conducting DUI and drug investigations, the magistrate's conclusion is supported by substantial evidence in the record. Thus, the deputy's use of these tests did not fall outside the scope of the limited investigation into whether Watt was under the influence.[4]

Watt also argues that this case is similar to *State v. Aguirre*, 141 Idaho 560, 112 P.3d 848 (Ct. App. 2005). In that case, officers stopped Aguirre for failing to stop when entering the roadway. By the time officers stopped Aguirre, they had already checked for warrants and were given other pertinent information from dispatch. Upon informing Aguirre of the purpose of the stop, the officers obtained Aguirre's license and registration. However, instead of pursuing the issuance of the citation, the officer asked if anything illegal was in the vehicle and asked for consent to search. When denied consent, the officer employed a drug dog around the vehicle. Though other officers were on scene, none of the officers continued the initial purpose of the stop; rather, the officers all pursued the drug investigation. This Court noted that the "purpose that justified the stop--the issuance of a traffic citation--was immediately abandoned." *Id.* at 564, 112 P.3d at 852. From all this, we held "that the use of the drug dog impermissibly extended the duration of the detention authorized by *Terry*." *Id.*

Watt's reliance on *Aguirre* is misplaced. In *Aguirre*, the officers abandoned the investigation into the traffic offense to pursue a drug investigation that was not supported by reasonable suspicion. Here, the only purpose of the detention was the investigation into whether Watt was under the influence of a controlled substance. Watt characterizes the purpose as an

---

[4]     In addition, Watt presented no evidence or argument that the tests could not provide indicia of drug use or were otherwise illegitimate.

inquiry into why he was at the dumpster. However, that encounter was consensual. The deputy's only purpose for the detention was the drug investigation, which was supported by reasonable suspicion.

Watt also argues his case is analogous to *Gutierrez*, wherein the initial purpose of the detention was to issue a warning citation for speeding. However, after the officer issued the warning citation, and thus concluded the purpose of the stop, the officer asked several questions relating to drugs, alcohol, and weapons. In reversing the denial of the motion to suppress, this Court reasoned:

> Although the duration of this questioning was relatively short, lasting sixty to ninety seconds, it was nonetheless an unwarranted intrusion upon the vehicle occupants' privacy and liberty. Heeding the Supreme Court's caution that an individual "may not be detained even momentarily without reasonable, objective grounds for doing so," [*Florida v. Royer*, 460 U.S. 491, 499, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983)] we conclude that the detention of Cheek and his passengers beyond the point when the warning was issued was unlawful.

*Gutierrez*, 137 Idaho at 652, 51 P.3d at 466 (footnote omitted).

*Gutierrez* is inapposite to Watt's case. In *Gutierrez*, the purpose of the investigation supported by reasonable suspicion had ended, and further detention to allow a drug investigation was unjustified. Here, the purpose of determining whether Watt was under the influence had not been dispelled. Upon calling the drug dog, the deputy administered several tests that further showed Watt may have been under the influence. Watt's pupils did not respond to light as the deputy would expect, Watt inaccurately estimated the passage of time, and the deputy observed tremors in Watt's eyes. The need to confirm or dispel Watt's condition continued. The drug dog arrived shortly before completion of the tests, at which time Watt admitted to possession of marijuana in his vehicle. At that point, the deputy had probable cause to detain Watt and search the vehicle. The deputy had reasonable suspicion to conduct a limited investigation into whether Watt was under the influence. The deputy acted reasonably in carrying out the investigation.

## III.
## CONCLUSION

The deputy's detention of Watt was supported by reasonable suspicion, and the detention was not unreasonably extended. Therefore, the district court's decision affirming the magistrate's order is affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR.**

7