**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41813**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Unpublished Opinion No. 614** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: September 3, 2015** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STEVEN KENNETH BOWMAN,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Melissa Moody, District Judge.

Order partially denying motion to suppress, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Steven Kenneth Bowman appeals from the district court's order partially denying his motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Ada County police dispatch received a call from a citizen who reported witnessing a domestic battery between two people in the car in front of him. Specifically, he reported that the female passenger in the car hit the male driver in the head, and the driver responded by grabbing her neck and pushing her away. The citizen also reported that he observed the vehicle swerve into other lanes of traffic. The citizen continued to follow the vehicle as he relayed his observations to dispatch and pulled over when police arrived to conduct a traffic stop on the vehicle.

1

Three Garden City police officers responded to the call: Officer Domeny, Officer O'Gorman, and K-9 handler, Sergeant Walbey. Sergeant Walbey spoke with the reporting party, while Officers Domeny and O'Gorman approached the driver and the passenger of the vehicle, respectively. The officers ordered the occupants out of the vehicle and secured them in handcuffs. The officers informed the occupants that they were not under arrest, but that they were being detained.

The driver and registered owner of the vehicle identified himself as Steven Bowman. Without objection, Officer Domeny conducted a pat search of Bowman's outer clothing, but found no weapons. Officer Domeny then advised Bowman of his *Miranda*[1] rights and questioned him about the alleged violence. Following this discussion with Bowman, Officer Domeny returned to his patrol car to conduct a warrants check on Bowman. As he was doing this, Officer O'Gorman approached Officer Domeny to talk with him.[2] As the officers were talking, they observed Bowman attempting to reach his hands into the front pocket of his jeans.

Concerned that Bowman could be reaching for a weapon or attempting to discard evidence, Officer O'Gorman approached Bowman and asked what he was trying to reach. Bowman responded that he was trying to get a cigarette. Officer O'Gorman patted the exterior of Bowman's pocket and felt what he believed to be a box of cigarettes. He then reached into Bowman's pocket and removed a pack of cigarettes as well as a clear small baggie that contained a crystalline substance, later identified as methamphetamine. Bowman was then arrested and placed in the back of Officer Domeny's patrol car.

Meanwhile, Sergeant Walbey finished speaking with the reporting party and met with Officers Domeny and O'Gorman to inform them of what the reporting party had said. It was at this point that the officers decided to walk the drug dog around Bowman's car. The drug dog alerted on the passenger seat of the car, and Officer Domeny proceeded to search the car. He found a locked safe under the passenger seat, which contained a large amount of cash, a digital scale, and two baggies of methamphetamine.

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]     After Officer O'Gorman placed the passenger in handcuffs and informed her that she was being detained, he conducted a partial pat search of her and secured her in the back of his patrol car.

The State charged Bowman with felony possession of a controlled substance with intent to deliver, Idaho Code § 37-2732(a), and misdemeanor possession of paraphernalia, I.C. § 37-2734A. Bowman was also charged with a persistent violator enhancement, I.C. § 19-2514. He filed a motion to suppress the evidence obtained as a result of the search of his person and the container within his vehicle, arguing that the officers (1) unlawfully searched his pocket, and (2) extended the stop beyond its initial purpose to deploy a drug dog. Following a hearing, the district court granted the motion in part and denied it in part. Specifically, it found that Officer O'Gorman unlawfully searched Bowman's pocket and suppressed the baggie found therein.[3] However, the court concluded that Bowman's detention was not unlawfully prolonged and that the search of his vehicle was lawful pursuant to the automobile exception.

Pursuant to a plea agreement, Bowman conditionally pled guilty to possession of a controlled substance with intent to deliver, reserving his right to appeal the district court's denial of his motion to suppress, and the State dismissed the drug paraphernalia charge and withdrew the persistent violator enhancement. The district court imposed a unified fifteen-year sentence, with two and one-half years determinate. Bowman timely appeals.

## II.

## ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Bowman challenges the district court's conclusion that the officers did not unlawfully extend the duration of the stop. An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d

---

[3] While Bowman agrees with the district court's decision to suppress the evidence found in his pocket, the State argues the district court erred in finding that the search of Bowman's pocket was unlawful. We agree with the district court.

926, 931 (Ct. App. 2004); *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). A drug dog sniff is not a search and may be done during an investigative stop, but the use of the drug dog may not lengthen the duration of the stop. *Illinois v. Caballes*, 543 U.S. 405, 409-410, (2005); *see also State v. Aguirre*, 141 Idaho 560, 563, 112 P.3d 848, 851 (Ct. App. 2005). "It is therefore not necessarily a Fourth Amendment violation for an officer who has stopped someone for a traffic violation to ask unrelated questions about drugs and weapons, or to run a drug dog around the perimeter of the vehicle." *Aguirre*, 141 Idaho at 563, 112 P.3d at 851. However, if an officer questions a driver about matters unrelated to the traffic stop after the purpose of the stop has been fulfilled, the questioning, no matter how short, extends the duration of the stop and is an unwarranted intrusion upon the privacy and liberty of the vehicle's occupants. *Gutierrez*, 137 Idaho at 651-53, 51 P.3d at 465-67. Nevertheless, an officer may employ a drug dog while another officer checks for identifying information. *State v. Parkinson*, 135 Idaho 357, 362-63, 17 P.3d 301, 306-07 (Ct. App. 2000).

Bowman contends that the stop was unreasonably extended because the domestic violence investigation was completed before the dog sniff began. In support of his argument, he relies on each of the officers' testimony regarding when the officers convened and communicated with one another after speaking with the parties involved. First, he points to Officer Domeny's testimony that he deemed the domestic violence investigation complete "[a]fter I met the other officers and got all of the sides of the story, we talked to each other and decided what course of action we were going to take." He also points to Officer O'Gorman's testimony to suggest that the officers' decided course of action was to arrest the passenger for domestic battery: "I came to the conclusion that it was going to be a simple battery, domestic" and the passenger was subsequently arrested. Lastly, he points to Sergeant Walbey's testimony: "[The other officers] also communicated that they had found what they believed to be methamphetamine on the male. And, at that point, we decided we would use my dog to sniff the exterior of the vehicle." At the time Sergeant Walbey ran the drug dog around the vehicle, Bowman and the passenger remained apart in separate patrol vehicles, but following arrest, they were transported together. Based on the officers' testimony, Bowman argues that the decision to arrest the passenger marked the completion of the investigation and that the drug dog sniff occurred after this decision was made.

4

After considering the officers' testimony, the district court concluded that the investigation was still in progress while Sergeant Walbey deployed the drug dog. In reaching this conclusion, the district court found, based on Sergeant Walbey's testimony, that "at the time [the drug dog] was engaged in his assigned task, Officer O'Gorman was talking with Mr. Bowman. Thus, there is evidence to suggest that the time used by the officers was necessary to complete the investigation into the alleged domestic battery." Bowman argues that the district court's finding that Officer O'Gorman spoke with Bowman while the drug dog sniffed the car is clearly erroneous. Specifically, he contends that Sergeant Walbey was not certain of what Officer O'Gorman was doing while the dog sniff was occurring because he stated, "I *think* Officer O'Gorman was back talking with Mr. Bowman at that time." (Emphasis added.) Despite the lack of absolute certainty in Sergeant Walbey's testimony as to the other officers' activities while he ran the drug dog around the vehicle, the district court obviously gave credence to his testimony. The district court's finding is supported by substantial evidence.

Bowman also argues that even if Officer O'Gorman was in fact talking to Bowman, as the district court found, there was no evidence to suggest that the domestic violence investigation was still in progress during the dog sniff. However, the logical inference is that Officer O'Gorman would need to make contact with Bowman to conclude the investigation of the domestic battery, lest he be left in the dark. The district court's finding that talking to Bowman was necessary to complete the domestic battery investigation is supported by substantial evidence in the record.

Lastly, Bowman argues that the only justification for running the drug dog around Bowman's vehicle was that the officers found methamphetamine in his pocket, and because the evidence found in his pocket was suppressed, the evidence found in his car was the fruit of Officer O'Gorman's unlawful search of Bowman's pocket. One may argue that it is more likely an officer would run a drug dog around a stopped vehicle after a baggie of controlled substances is found in a subject's pocket for purposes of the fruit of the poisonous tree doctrine. However, as the district court found, Bowman failed to establish a "but for" connection relating the discovery of the methamphetamine to the deployment of the drug dog.[4] The officers deployed

---

[4]    The district court concluded, "Certainly the Defendant may argue that the police would not have deployed [the drug dog] *but for* the discovery of the claimed methamphetamine in Mr. Bowman's pocket, but no evidence from the suppression hearing supports this claim."

the drug dog during the lawful duration of the stop, and the dog's positive alert gave them probable cause to search the vehicle. *State v. Gibson*, 141 Idaho 277, 283, 108 P.3d 424, 430 (Ct. App. 2005). Accordingly, the officers' search of the vehicle was justified pursuant to the automobile exception of the warrant requirement. *See United States v. Ross*, 456 U.S. 798, 820-21 (1982).

## III.

## CONCLUSION

Bowman has failed to demonstrate the district court erred in denying his motion to suppress. Accordingly, Bowman's judgment of conviction is affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.