**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43700**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Unpublished Opinion No. 736 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: October 19, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DEBRA JOAN NOELLER, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

Order granting motion to suppress, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant.

Eric D. Fredericksen, Interim State Appellate Public Defender; Reed P, Anderson, Deputy Appellate Public Defender, Boise, for respondent.

---

HUSKEY, Judge

The State appeals from the district court's order granting Debra Joan Noeller's motion to suppress. The State argues the district court erred when it concluded the officer lacked reasonable suspicion to stop Noeller's vehicle for a suspected violation of Idaho Code Section 49-944 because the plain language of the statute applies to any vehicle driven in Idaho. Noeller contends even if the officer had reasonable suspicion, the district court can be affirmed on the alternative theory that the stop was unreasonably extended and Noeller's consent to search the vehicle was involuntary. Although we hold the district court erred in finding I.C. § 49-944 applies only to vehicles registered in Idaho, we affirm the district court's order granting the motion to suppress because the stop was unreasonably extended and Noeller's consent to search was ineffective.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

An officer stopped Noeller's vehicle, which had Arizona license plates, on Interstate 86 because the vehicle appeared to have window tinting that was too dark on the side and rear windows in violation of I.C. § 49-944. The officer approached the vehicle on the passenger side. Upon initial contact, the officer observed Noeller and the passenger were the only occupants. The officer informed Noeller of the reason for the stop and asked for license, registration, and insurance. The officer had a tint meter, a device used to measure the tint darkness and/or light transmission in percentages, but he was not carrying it at the time he approached the vehicle, and he did not make any attempt to check the vehicle's window tint during the stop.

As Noeller and the passenger were retrieving the requested information, the officer asked several questions. The officer was standing on the passenger side of the vehicle and the passenger responded to the majority of the questions. Once the officer was given the registration and insurance, he conducted a records check which indicated there were no outstanding warrants for Noeller. When the officer noticed Noeller's name was not on the registration, the passenger informed the officer the vehicle belonged to his wife. The officer asked for the passenger's identification and confirmed the passenger had no warrants. The officer did not notice any indication of drug use during his conversation with Noeller and the passenger, and both Noeller and the passenger remained calm during the questioning.

Despite Noeller's and the passenger's calm demeanor, the lack of evidence of drug use, the valid license, registration, and insurance, and the lack of warrants, the officer nevertheless believed Noeller and her passenger were involved in drug activity. Thus, while running the records check on the passenger, the officer requested back-up so the officer could deploy his drug dog.

When the second officer arrived at the scene, the initial officer requested the second officer take over the investigation of the stop. The initial officer gave the second officer the drivers' licenses, registration, and proof of insurance and advised him of the reason for the stop. The initial officer testified he abandoned the initial purpose of the stop, the possible window tint violation. The second officer testified that he did not have a tint meter in his patrol vehicle, did not make any attempt to check the tint, and never dealt with the original purpose of the stop. The second officer made contact with Noeller and the passenger, asked them to step out of the

2

vehicle, and had them stand separately while the initial officer deployed his drug dog. The drug dog did not alert.

At this point, the officers did not inform Noeller or the passenger that they were free to leave. Additionally, the officers did not return the licenses, registration, or insurance to Noeller or the passenger. While the drug dog conducted the free-air sniff, the second officer continued questioning Noeller. After the failed sniff, the initial officer returned the drug dog to the police vehicle and continued questioning the passenger. The two officers conferred and determined that the occupants' stories did not match. The initial officer testified this indicated the possibility of criminal activity.

The initial officer re-contacted Noeller and requested her consent to search the vehicle, which Noeller gave. The officers testified they did not request consent from the passenger. A search of the interior of the vehicle yielded methamphetamine and a pipe in Noeller's purse. Noeller was arrested. A more thorough search of the vehicle produced approximately 500 grams of methamphetamine in the bumper of the vehicle.

Noeller was charged with felony trafficking in methamphetamine, I.C. § 37-2732(a)(4)(C). Noeller filed a motion to suppress and stipulated to submit briefs regarding the motion to suppress. After the briefs were submitted, the district court granted the motion to suppress, finding that Idaho law regarding window tinting, I.C. § 49-944, applies only to vehicles registered in Idaho. Because the vehicle was registered in Arizona, the district court held, "the mere existence of window tinting cannot serve as a basis for reasonable suspicion to allow an officer to stop a vehicle to test the window tint when the vehicle is not registered in Idaho." The district court also noted that "although other issues could be addressed as to the appropriateness of further investigation, length of the stop, reasonable suspicion, etc., the Court need not address those issues because of the decision made herein." The State timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts,

weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

### III.

### ANALYSIS

On appeal, the State argues the district court erred when it concluded the officer lacked reasonable suspicion to stop Noeller's vehicle for a suspected violation of I.C. § 49-944 because the plain language of the statute applies to any vehicle driven in Idaho. Noeller contends the district court did not err for two reasons. First, Noeller argues the district court correctly found I.C. § 49-944 applies only to vehicles registered in Idaho. Second, Noeller argues this Court can affirm the district court on the alternative theory that the stop was unreasonably extended and Noeller's consent to search the vehicle was ineffective.

**A.      The Plain Language of I.C. § 49-944(2) Applies to Any Car Driven in Idaho**

On appeal, the State argues the district court's reliance on *State v. Morgan*, 154 Idaho 109, 294 P.3d 1121 (2013) is misplaced. The State argues the officer had reasonable suspicion to stop Noeller for a suspected violation of I.C. § 49-944(2) because unlike the statute analyzed in *Morgan*, the plain language of I.C. § 49-944(2) applies to any vehicle driven in Idaho, not just those registered in Idaho. Noeller asserts two reasons why the district court was correct to rely on *Morgan* and hold that out-of-state vehicles cannot be expected to comply with Idaho vehicle requirements. First, Noeller argues a properly displayed out-of-state license plate carries with it the presumption that window tinting is valid in the state where it is registered. Second, Noeller argues the terms "any person," "no person," and "any motor vehicle" render the statute ambiguous as those terms are capable of more than one conflicting construction. As such, Noeller argues the statute must be construed as a whole and because the term "any person" in section one can mean any citizen of Idaho, section two must be construed in the same way.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208,

4

953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.

We are not persuaded by Noeller's argument that the statute is ambiguous. A statute is ambiguous where the language is capable of more than one reasonable construction. *Porter v. Bd. of Trustees, Preston School Dist. No. 201*, 141 Idaho 11, 14, 105 P.3d 671, 674 (2004). Although Noeller asserts a different interpretation of the terms in the statute, ambiguity is not established merely because different interpretations are presented by the parties. *Bonner County v. Cunningham*, 156 Idaho 291, 295, 323 P.3d 1252, 1256 (Ct. App. 2014). As such, we will construe I.C. § 49-944 as written.

Idaho Code Section 49-944(1) states it is "unlawful for any person to place, install, affix or apply any window tinting film or sunscreening device to the windows of any motor vehicle . . . ." However, the statute allows the front side vents, driver's front side windows, and the rear window to have a nonreflective window tinting film or a sunscreening device if the light transmission is not less than thirty-five percent (35%). The side windows to the rear of the driver must have a light transmission of not less than twenty percent (20%). Idaho Code Section 49-944(2) states: "[n]o person shall operate on the public highways, sell, or offer to sell any motor

5

vehicle with a windshield or windows which are not in compliance with the provisions of this section."

> The district court found that *Morgan*:
>
> established that vehicle requirements, such as license plates, are made with regard to the prevailing laws within the state the vehicle is registered. . . . [T]his Court is guided by the *Morgan* decision and finds that the Idaho law regarding window tinting, I.C. § 49-944, applies only to vehicles registered in Idaho.

The district court further explained, "[i]f an officer notices that a vehicle has out-of-state plates as well as window tinting, possibly darker than allowed by Idaho law, then the officer is on notice that the window tinting on the out-of-state vehicle is not controlled by Idaho law, but by the home state." As such, the district court held, "the mere existence of window tinting cannot serve as a basis for reasonable suspicion to allow an officer to stop a vehicle to test the window tint when the vehicle is not registered in Idaho."

The statute at issue in *Morgan* was I.C. § 49-428 which states, in pertinent part: "license plates assigned to a motor vehicle shall be attached, one (1) in the front and the other in the rear . . . ." In *Morgan*, an officer initiated a traffic stop after observing Morgan's out-of-state vehicle did not have a front license plate. *Morgan*, 154 Idaho at 111, 294 P.3d at 1123. The Court found I.C. § 49-428 requires "a vehicle registered in Idaho display both front and rear license plates," but "this requirement does not extend to vehicles registered in other states." *Morgan*, 154 Idaho at 111, 294 P.3d at 1123. As such, the Court held the officer did not have reasonable suspicion to believe a violation of I.C. § 49-428 had occurred. *Morgan*, 154 Idaho at 111, 294 P.3d at 1123.

Unlike the statute in *Morgan* which governed how to properly display an Idaho license plate on a vehicle registered in Idaho, the statute in this case prohibits behavior on Idaho public highways. By prohibiting behavior, the statute governs a person's conduct in Idaho. Because I.C. § 49-944 governs conduct, it applies to any person, whether they are an Idaho citizen or not, driving any motor vehicle in Idaho that is not in compliance with I.C. § 49-944. Although Noeller's vehicle was registered in Arizona, the officer had reasonable suspicion for the stop because Noeller was driving that vehicle in Idaho and because the officer suspected the vehicle's window tinting was not in compliance with I.C. § 49-944.

6

**B.** **The District Court's Order is Affirmed on the Alternative Theory That the Stop Was Unreasonably Extended**

Noeller argues even if the officer had reasonable suspicion, the district court's order granting her motion to suppress should be affirmed on the alternative theory that the stop was unreasonably extended. Noeller asserts that even if the initial traffic stop was valid, the officer unconstitutionally extended the stop since the officer had no reasonable, articulable suspicion of criminal activity. Because the stop was unreasonably extended, Noeller contends her consent to search the vehicle was ineffective. The State argues the district court declined to address whether there was reasonable suspicion to extend the stop and therefore, this Court cannot determine if the stop was unlawfully prolonged and Noeller's consent was thereby involuntary because there are no relevant factual findings.

**1.** **There is a sufficient factual record**

Even if the district court erred, we can affirm on grounds that the stop was unreasonably extended. Where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Diaz*, 158 Idaho 629, 636, 349 P.3d 1220, 1227 (Ct. App. 2015). We will not, however, do so in the absence of a sufficient factual record. *State v. Case*, 159 Idaho 546, 552, 363 P.3d 868, 874 (Ct. App. 2015).

Here, the three issues presented on appeal were the same three issues presented to the district court in Noeller's motion to suppress. Evidence on each theory was presented during the motion to suppress hearing. Because the district court found the mere existence of window tinting cannot serve as a basis for reasonable suspicion to allow an officer to stop a vehicle to test the window tint when the vehicle is not registered in Idaho, the district court did not address whether the officer had reasonable suspicion to prolong the stop to investigate additional criminal activity or whether Noeller's consent was valid. Nonetheless, these issues were raised in the motion to suppress and addressed during the motion to suppress hearing; therefore, there is a sufficient factual record for this Court to render a decision.

**2.** **The drug dog sniff unlawfully extended the stop**

Noeller contends the stop was unreasonably extended because at the time the officer ran his drug dog around her vehicle and the dog failed to alert, the officer could not have had reasonable, articulable suspicion of additional criminal activity. Noeller contends that both constitutions were violated, but she provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States

Constitution in this case. Therefore, this Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Noeller's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Generally, evidence obtained as a result of an unreasonable search or seizure must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Prouse*, 440 U.S. at 653; *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. The purpose of a traffic stop is not permanently fixed, however, at the moment the stop is initiated, for during the course of the detention there may evolve suspicion of criminality different from that which initially prompted the stop. *State v. Parkinson*, 135 Idaho 357, 362, 17 P.3d 301, 306 (Ct. App. 2000). The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *Ferreira*, 133 Idaho at 483, 988 P.2d at 709. The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *Montague*, 114 Idaho at 321, 756 P.2d at 1085.

In *Parkinson*, 135 Idaho at 362-63, 17 P.3d at 306-07, this Court held it was permissible for one officer to question a vehicle's driver about drugs and weapons and to take a drug dog around the car while another officer checked with dispatch on the driver's status and wrote a traffic citation. In *Parkinson*, the questioning and use of a drug dog did not extend the duration of the stop beyond what was necessary to address the traffic violation. *Id.* By contrast, in *State v. Aguirre*, 141 Idaho 560, 563-64, 112 P.3d 848, 851-52 (Ct. App. 2005), this Court held where

8

officers abandon the initial purpose of a routine traffic stop and extend the stop to allow for a drug dog search, the extension must be justified by a reasonable suspicion that criminal activity is afoot.

In *Aguirre*, officers stopped Aguirre for failing to stop prior to entering the roadway. *Id.* at 564, 112 P.3d at 852. By the time officers stopped Aguirre, they had already checked for warrants and other pertinent information. *Id.* One officer approached Aguirre, informed him of the purpose of the stop, and obtained Aguirre's license and registration. *Id.* However, instead of pursuing the issuance of the citation, the officer asked Aguirre if anything illegal was in the vehicle and asked for consent to search. *Id.* When denied consent, the officer employed a drug dog around the vehicle. *Id.* Though other officers were on the scene, none of the officers continued the initial purpose of the stop; rather, the officers all pursued the drug investigation. *Id.* This Court noted, the "purpose that justified the stop--the issuance of a traffic citation--was immediately abandoned." This Court held, "the use of the drug dog impermissibly extended the duration of the detention authorized by *Terry*."[1] *Id.*

The present case is more similar to the officers' behavior in *Aguirre* than the simultaneous drug investigation and issuance of a traffic citation in *Parkinson*. Here, the officer stopped Noeller's vehicle because he suspected a violation of window tint laws. The officer approached the passenger side of Noeller's vehicle, asked how Noeller and her passenger were doing, and informed them of the reason for the stop. The officer asked for Noeller's license and registration.

As Noeller and the passenger were retrieving the requested information, the officer asked several questions. The officer was standing on the passenger side of the vehicle and the passenger responded to the majority of the questions. Once the officer was given the registration and insurance, he conducted a records check which indicated there were no outstanding warrants for Noeller. When the officer noticed Noeller's name was not on the registration, the passenger informed the officer the vehicle belonged to his wife. The officer asked for the passenger's identification and confirmed there were no warrants for the passenger. The officer did not notice any indication of drug use during his conversation with Noeller and the passenger, and both Noeller and the passenger remained calm during the questioning.

---

[1]    *See Terry v. Ohio*, 392 U.S. 1 (1968).

Despite Noeller's and the passenger's calm demeanor, the lack of evidence of drug use, the valid license, registration and insurance, and the lack of warrants, the officer nevertheless believed Noeller and her passenger were involved in drug activity. Thus, while running the records check on the passenger, the officer requested back-up so the officer could deploy his drug dog.

When the second officer arrived at the scene, the initial officer requested the second officer take over the investigation of the stop. The initial officer gave the second officer the drivers' licenses, registration, and proof of insurance and advised him of the reason for the stop. The second officer did not continue investigating the window tint violation. The initial officer testified that he abandoned the initial purpose of the stop. Like *Aguirre*, once Noeller was stopped and her information was verified, no effort was made to issue a traffic citation. The initial officer had a tint meter but he was not carrying it and did not make any attempt to check the window tint of the vehicle during the stop. Further, the second officer had no tint meter and did not make any attempt to check the tint.

The record indicates the officers were not conducting concurrent investigations like those in *Parkinson*--one aimed at resolution of the traffic offense and another aimed at drug interdiction. Rather, like *Aguirre*, the collective effort of the officers was uniformly directed at a drug investigation completely unrelated to the traffic stop. When the officers removed the occupants from the vehicle and deployed the drug dog, they did so without reasonable suspicion of a drug-related offense. Further, when the drug dog failed to alert, the officers continued to question Noeller and the passenger notwithstanding all the evidence rebutting any indication of criminal activity. Besides the lack of conversation between the initial officer and Noeller, the only fact giving the initial officer reasonable suspicion of criminal activity was Noeller's lack of conversation. The officer did not articulate any other basis to support a reasonable inference that Noeller had either committed or was about to commit a crime. Absent other articulable facts that Noeller was engaged in criminal activity and given all of the evidence rebutting such a belief, the drug dog sniff of Noeller's vehicle unlawfully extended the scope of the traffic stop. Therefore, we hold because the officer abandoned the purpose of the stop without reasonable suspicion, the district court did not err in granting Noeller's motion to suppress.

**3. Noeller's consent was ineffective because it was given during an illegal detention**

Noeller contends her consent to search the vehicle was ineffective because it was tainted by the illegal detention. Although a warrantless entry or search of a vehicle is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

Here, the drug dog sniff of Noeller's vehicle unlawfully extended the scope of the traffic stop. After the drug dog failed to alert, the officers did not return Noeller's license or the vehicle's registration or insurance, did not inform Noeller she was free to leave, and continued to question both Noeller and the passenger. The officers then requested consent to search the vehicle, which Noeller granted. Because Noeller's search was given during an illegal detention, her consent was tainted by the illegality and, therefore, was ineffective. *See Florda v. Royer*, 460 U.S. 491, 507-08 (1983).

**IV.**

**CONCLUSION**

For the reasons set forth above, the district court erred in finding the officer did not have reasonable suspicion to stop Noeller for a suspected violation of I.C. § 49-944(2). However, because the officer unreasonably extended the scope of the traffic stop, Noeller's consent was tainted by the illegality and, therefore, was ineffective. Thus, the district court's order granting Noeller's motion to suppress is affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.

11